JOHN H. DONBOLI (SBN: 205218)
E-mail: jdonboli@delmarlawgroup.com
DEL MAR LAW GROUP, LLP
12250 El Camino Real, Suite 120
San Diego, CA 92130
Telephone: (858) 793-6244
Facsimile: (858) 793-6005

SHANNON L. HOPKINS
Email: shopkins@zlk.com
NANCY A. KULESA
Email: nkulesa@zlk.com
STEPHANIE A. BARTONE
Email: sbartone@zlk.com
LEVI & KORSINSKY LLP
733 Summer Street, Suite 304
Stamford, CT 06901
Telephone: (212) 363-7500
Facsimile: (212) 363-7171

Counsel for Plaintiff and on behalf of all others similarly situated

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALLEN MOURE, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>  vs.<br><br>APPLE, INC., a California Corporation, and DOES 1 through 100, inclusive,<br><br>    Defendants. | Civil Action No.:14-cv-2569-JM-JLB<br><br>**CLASS ACTION**<br><br>**COMPLAINT FOR:**<br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF: (1) CALIFORNIA CONSUMERS LEGAL REMEDIES ACT; (2) CALIFORNIA UNFAIR COMPETITION LAW; AND (3) CALIFORNIA FALSE ADVERTISING LAW**<br><br>**DEMAND FOR JURY TRIAL [FRCP 38]** |

-1-

COMES NOW, Plaintiff Allen Moure ("Plaintiff"), by and through his undersigned attorneys, brings this class action on behalf of himself and all others similarly situated, based upon personal knowledge as to himself and his activities, and on information and belief as to all other matters against defendant Apple, Inc. ("Apple" or "Defendant"), and alleges the following:

## NATURE OF THE CASE

1.      Defendant, the manufacturer of 8 GB and 16 GB iPhones, iPads and iPods (the "Devices"), has engaged in false, deceptive and misleading advertising and trade practices with respect to the promotion and sale of its Devices to Florida consumers and to the general public.

2.      During the relevant time period, Defendant manufactured, marketed and/or sold its Devices with representations that such devices contained 8 GB or 16 GB worth of storage space.

3.      Defendant's representations are false, deceptive and misleading because, on information and belief, Apple's Devices contain up to 23.1% less storage space than advertised.  Specifically, Apple fails to disclose that the represented storage capacity is not the actual storage available to the user because: (1) the Device comes preloaded with software that uses up part of the represented storage space; and (2) if a user upgrades his/her Device from an older operating system to the most recent iOS8 operating system, a significant portion of the available storage space is already used up.

4.      Apple is well aware that consumers are not provided with the represented storage capacity and that consumers will eventually run out of storage space on their Device.  Capitalizing on consumers' need for additional storage space, Apple aggressively advertises a monthly storage system, iCloud, which consumers can purchase for a monthly fee.

/ / /

COMPLAINT

5.     Based on Apple's representations, Plaintiff and the Classes, as defined herein, believed that the Devices contained more storage space than they actually did.  Had Plaintiff and the Classes been made aware that a significant amount of storage space in one or more of their Devices was not accessible, they would not have purchased the Device or would have paid less for it.

6.     As a result of Defendant's false and misleading statements, Plaintiff and the Classes have suffered, and continue to suffer, injury in fact including the loss of money and/or property.

## JURISDICTION AND VENUE

7.     Diversity subject matter jurisdiction exists over this class action pursuant to the Class Action Fairness Act of 2005, Pub. L. No. 109-2, 119 Stat. 4 (2005), amending 28 U.S.C. § 1332, at new subsection (d), conferring federal jurisdiction over class actions involving: (a) 100 or more members in the proposed classes; (b) where at least some members of the proposed classes have different citizenship from some defendants; and (c) where the claims of the proposed class members exceed the sum or value of five million dollars ($5,000,000) in the aggregate. 28 U.S.C. §§ 1332(d)(2) and (6).

8.     While the exact number of members in the proposed classes is unknown at this time, Plaintiff has reason to believe that thousands of consumers purchased Apple's Devices throughout the United States.

9.     Diversity of citizenship exists between Plaintiff and Defendant. Plaintiff is a citizen of Florida and resides in West Park, Florida.  Apple is a California corporation with principle executive offices located in Cupertino, California.  Therefore, diversity of citizenship exists.

10.     While the exact damages to Plaintiff and the Classes are unknown at this time, Plaintiff reasonably believes that his claims exceed five million dollars ($5,000,000) in the aggregate.

COMPLAINT

11.     This Court has personal jurisdiction over Defendant because Defendant has purposefully availed itself of the privilege of conducting business in the State of California.

12.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because many of the acts and transactions giving rise to this action occurred in this District and because Defendant:

> a.  has intentionally availed itself of the laws and markets within this District through the promotion, marketing, distribution and sale of its products in this District;
>
> b.  does substantial business in this District; and
>
> c.  is subject to personal jurisdiction in this District.

## **PARTIES**

13.     Plaintiff is a resident of West Park, Florida.  Between approximately November 2013 and November 2014, Plaintiff purchased four Devices: (1) on November 8, 2013, Plaintiff purchased an iPhone 5C 16GB from Apple for $598.90 ($16.00 shipping included); (ii) on December 2, 2013, Plaintiff purchased an iPad 2 16GB from Target.com for $399.99; (iii) on November 26, 2014, Plaintiff purchased an iPad Air 16GB from QVC for $716.79 ($26.20 shipping included); and (iv) in or around November 2014, Plaintiff purchased an iPad Air 2 16 GB from Wal-Mart for which he believes he paid market value.  Plaintiff purchased each of these devices primarily for personal, family or household use.

14.     Subsequent to his purchases, Plaintiff updated each of his four devices to iOS 8 software.  As a result of uploading iOS 8, Plaintiff ran out of storage space on each of his Apple devices.  Plaintiff was unaware that the upgrade would substantially inhibit the storage capacity of each device.  Plaintiff called Apple about the storage issue and was directed by Apple to purchase additional storage on "iCloud" cloud storage.  Plaintiff purchased additional iCloud storage for his

COMPLAINT

1    iPhone 5C and pays $3.99 per month for 200 GB of additional storage.

2        15.    Defendant is California Corporation with its principal executive

3    offices located at 1 Infinite Loop, Cupertino, California 95014.

4                        **FACTUAL ALLEGATIONS**

5    Company Background and Representations

6        16.    Incorporated in 1977, Apple designs, manufactures and markets

7    mobile communication and media devices, personal computers and portable digital

8    music players, and sells a variety of related software, services, accessories,

9    networking solutions and third-party digital content and applications.  The

10   Company sells its products worldwide through its retail stores, online stores and

11   direct sales force, as well as through third-party cellular network carriers,

12   wholesalers, retailers and value-added resellers.

13       17.    Apple is in the business of manufacturing and selling its line of

14   "iPhone" cellular telephones.  The first iPhone model was released on or about

15   June 29, 2007, and the most recent model, iPhone 6 and 6+, were introduced on or

16   about September 9, 2014.  Predecessor iPhone models include the iPhone 5S and

17   5C introduced on or about September 10, 2013, and the iPhone 4S introduced on or

18   about October 10, 2011.

19       18.    Apple represents in its advertising that the iPhone 6 and 6+ are

20   available with a hard drive capacity of 16 GB.  With respect to earlier versions of

21   the iPhone, Apple makes similar representations regarding its 16 GB and 8 GB

22   storage capacities.

23       19.    In addition to iPhones, Apple also manufactures and sells a line of

24   "iPad" tablet devices and "iPod" audio players.  The iPad was first introduced on

25   or about April 3, 2010.  The iPod was first introduced on or about October 23,

26   2001.

27       20.    During the relevant time period, Apple made representations

28

COMPLAINT

concerning the storage capacity of its 8 GB and 16 GB iPads and iPods.

21.     As stated herein, Apple's representations and advertisements concerning the storage capacity of its Devices are false and misleading because they omit material facts that an average consumer would consider in deciding whether to purchase a Device.  Specifically, Apple fails to disclose that the represented storage capacity is not the actual storage available to the user because: (1) the Device comes preloaded with software that takes up part of the represented storage space; and (2) if a user upgrades his/her Device from an older operating system to the most recent iOS 8 operating system, a significant portion of the available storage space is used up.

22.     Apple's representations regarding the storage capacity of its Devices are important to consumers because they help consumers determine which device will be able to meet their storage needs.  Thus, Apple's representations are important for consumers when deciding whether to purchase a more expensive model affording a greater amount of storage space or a less expensive model with less storage space.

<u>Apple Represents The Storage Capacity of Its Devices Using the Decimal System</u>

23.     The fundamental unit of measurement used to represent the storage capacity of computing and telecommunications devices is a digital unit called a byte.  A byte is usually eight digits long and represents a character, such as a letter, number or typographic symbol.  A byte can also hold a string of binary digits ("bits") that is used for some larger unit for application purposes, such as a stream of bits that constitute a visual image.

24.     Storage capacity is usually measured in byte multiples, which can be defined under one of two systems.  Under the "decimal system," a kilobyte ("KB") is one thousand bytes, or 103 bytes; a megabyte ("MB") is one million bytes, or 106 bytes; and a gigabyte ("GB") is one billion bytes, or 109 bytes.  The decimal

COMPLAINT

system is recognized by the International System of Quantities ("ISQ"), a measurement system jointly promulgated by the International Organization for Standardization ("ISO") and the International Electrotechnical Commission ("IEC"). The decimal system is traditionally used by companies making data-storage products.

25. An alternate to the "decimal system" is the "binary system," which uses a base 2 system rather than the base 10 system used in the decimal system. In the binary system, a kibibyte ("KiB") is 1024 bytes, or $2^{10}$ bytes; a mebibyte ("MiB") is 1,048,576 bytes, or $2^{20}$ bytes; and a gibibyte ("GiB") is 1,073,741,824 bytes, or $2^{30}$ bytes.

26. Apple advertises its Devices using the decimal system definition of gigabyte, or GB. Thus, a Device labeled as 8 GB is advertised as containing 8 billion bytes, and a Device labeled 16 GB is advertised as containing 16 billion bytes.

27. Although Apple advertises based upon the decimal system, upon information and belief, the Devices actually display available capacity based upon the binary definition. Rather than using the GiB representation, as suggested by the ISQ, Apple affixes the GB abbreviation to its Devices, even though it is referring to gibibytes rather than gigabytes. Not only does this difference confuse the technologically savvy consumer, but it also prevents consumers from making a comparison to other products. Although the GiB and GB are similar, one GiB is approximately 1.074 GB.

Apple Falsely Represents The Amount of Storage Space Accessible To Consumers

28. Apple falsely advertises the amount of storage space on its Devices that are accessible to consumers.

29. Specifically, Apple fails to disclose that the advertised amount of storage is not entirely available for consumers to access. Rather, Apple segregates

COMPLAINT

1 the advertised storage space into a media partition and a root partition.  The media

2 partition is the storage space available to consumers to store data, such as videos,

3 contacts and other user files.  The root partition, on the other hand, is the storage

4 space exclusively within Apple's control that contains the operating system and

5 other pre-installed software.  Consumers cannot access the storage space of the

6 root partition, nor can they reduce the storage capacity of the root partition in order

7 to increase the storage capacity of the media partition. Thus, if a consumer uses all

8 of the storage capacity in the media partition, he/she cannot use any of the unused

9 space from the root partition.

10   30. If a consumer were to go to Apple's store online and purchase a

11 Device, such as an iPhone, there is no indication that the advertised storage space

12 is more than the actual storage space available to consumers.  As shown below, the

13 website merely has the consumer select the amount of storage, but does not

14 indicate that the consumer is receiving a different amount than the selected

15 amount:




-8-

COMPLAINT

31.    On the same page, Apple represents that certain applications and the operating system come built into the Device, but fails to acknowledge that these consume part of the Device's storage space:



32.    Under "Technical Specifications" the site states, in relevant part:

COMPLAINT

| Capacity and Price[2] | 16GB | 16GB |
|---|---|---|
| | $199 | $299 |
| | 64GB | 64GB |
| | $299 | $399 |
| | 128GB | 128GB |
| | $399 | $499 |

33.     Based on these representations, no reasonable consumer would believe the represented storage capacities were different than the actual available space.  Finally, at the very bottom of the page in small, barely legible, gray  print, the site states:

*To identify your iPhone model number, see http://support.apple.com/kb/HT3939. For details on LTE support, contact your carrier and see www.apple.com/iphone/LTE.

1. Requires a plan (which may include restrictions on switching service providers and roaming, even after contract expiration); sold separately to qualified customers. Credit check required; must be 18 or older. Wireless service is provided by and is the sole responsibility of your wireless service provider. Some capabilities are not available in all areas and depend on your wireless plan and service provider network. Service may not be available in all areas or at the signal strength, rates, speeds, or bandwidth as demonstrated. Some features may require added fees. Contact your wireless service provider for more details. Customers who want to upgrade from another phone or replace a previous-generation iPhone should check with their wireless service provider for pricing options. For those who are not qualified customers, are not eligible for an early upgrade, are purchasing an unlocked iPhone, or wish to buy an iPhone as a gift, see your carrier, an Apple Retail Store Specialist, the Apple Online Store, or an Apple Authorized Reseller for pricing. In CA and RI, sales tax is collected on the unbundled price of iPhone. Wi-Fi Internet access required for some features; fees may apply. Use constitutes acceptance of Apple's software license agreement. Warranty information is also available at www.apple.com/legal/warranty/iphone. Unauthorized modification of your iPhone software violates the software license agreement. Inability to use an iPhone due to unauthorized modifications is not covered under your warranty.

COMPLAINT

2.  1GB = 1 billion bytes; actual formatted capacity less.

3.  Size and weight vary by configuration and manufacturing process.

4.  FaceTime calling requires a FaceTime-enabled device for the caller and recipient and a Wi-Fi connection. Availability over a cellular network depends on carrier policies; data charges may apply.

5.  LTE, VoLTE, and Wi-Fi calling are available in select markets and through select carriers. Speeds are based on theoretical throughput and vary based on site conditions. For details on LTE support, contact your carrier and see www.apple.com/iphone/LTE.

6.  Siri may not be available in all languages or in all areas, and features may vary by area. Internet access required. Cellular data charges may apply.

7.  All battery claims depend on network configuration and many other factors; actual results will vary. Battery has limited recharge cycles and may eventually need to be replaced by Apple service provider. Battery life and charge cycles vary by use and settings. See www.apple.com/batteries and www.apple.com/iphone/battery.html for more information.

8.  iMovie, Pages, Numbers, and Keynote are free on the App Store for qualifying iOS 8 compatible devices with initial activation on or after September 1, 2013. GarageBand is free on the App Store for qualifying iOS 8 compatible devices with initial activation on or after September 1, 2014. See www.apple.com/ios/whats-new for iOS 8 compatible devices. Downloading apps requires an Apple ID.

9.  Wireless broadband recommended; fees may apply.

10. Customized suggestions based on recipient and app are not available for Chinese (Simplified, Traditional), and Japanese.

Some features may not be available for all countries or all areas. Click here to see complete list.
Application and service availability and pricing are subject to change.

34.     This is a snapshot of what the above representation looks like on the Apple website:

*To identify your iPhone model number, see http://support.apple.com/kb/HT3939. For details on LTE support, contact your carrier and see www.apple.com/iphone/LTE.

1. Requires a plan (which may include restrictions on switching service providers and roaming, even after contract expiration); sold separately to qualified customers. Credit check required; must be 18 or older. Wireless service is provided by and is the sole responsibility of your wireless service provider. Some capabilities are not available in all areas and depend on your wireless plan and service provider network. Service may not be available in all areas or at the signal strength, rates, speeds, or bandwidth as demonstrated. Some features may require added fees. Contact your wireless service provider for more details. Customers who want to upgrade from another phone or replace a previous-generation iPhone should check with their wireless service provider for pricing options. For those who are not qualified customers, are not eligible for an early upgrade, are purchasing an unlocked iPhone, or wish to buy an iPhone as a gift, see your carrier, an Apple Retail Store Specialist, the Apple Online Store, or an Apple Authorized Reseller for pricing. In CA and RI, sales tax is collected on the unbundled price of iPhone. Wi-Fi Internet access required for some features; fees may apply. Use constitutes acceptance of Apple's software license agreement. Warranty information is also available at www.apple.com/legal/warranty/iphone. Unauthorized modification of your iPhone software violates the software license agreement. Inability to use an iPhone due to unauthorized modifications is not covered under your warranty.

2. 1GB = 1 billion bytes; actual formatted capacity less.

3. Size and weight vary by configuration and manufacturing process.

4. FaceTime calling requires a FaceTime-enabled device for the caller and recipient and a Wi-Fi connection. Availability over a cellular network depends on carrier policies; data charges may apply.

5. LTE, VoLTE, and Wi-Fi calling are available in select markets and through select carriers. Speeds are based on theoretical throughput and vary based on site conditions. For details on LTE support, contact your carrier and see www.apple.com/iphone/LTE.

6. Siri may not be available in all languages or in all areas, and features may vary by area. Internet access required. Cellular data charges may apply.

7. All battery claims depend on network configuration and many other factors; actual results will vary. Battery has limited recharge cycles and may eventually need to be replaced by Apple service provider. Battery life and charge cycles vary by use and settings. See www.apple.com/batteries and www.apple.com/iphone/battery.html for more information.

8. iMovie, Pages, Numbers, and Keynote are free on the App Store for qualifying iOS 8 compatible devices with initial activation on or after September 1, 2013. GarageBand is free on the App Store for qualifying iOS 8 compatible devices with initial activation on or after September 1, 2014. See www.apple.com/ios/whats-new for iOS 8 compatible devices. Downloading apps requires an Apple ID.

9. Wireless broadband recommended; fees may apply.

10. Customized suggestions based on recipient and app are not available for Chinese (Simplified, Traditional), and Japanese.

Some features may not be available for all countries or all areas. Click here to see complete list.

Application and service availability and pricing are subject to change.

35.     Number 2 reads: "1GB = 1billion bytes; actual formatted capacity less."  A similar representation is also hidden on the box of an Apple Device, as shown below:

COMPLAINT



36.      Not only would a reasonable consumer fail to see or be able to read such fine print, but even if a consumer were to read the print, he or she would still have no reason to believe that the storage capacity of that Device was significantly less than the advertised amount.  A reasonable consumer would not know that the "built-in apps" and iOS 8 were consuming a portion of the advertised storage space or that a portion of the represented storage was inaccessible due to the root partition.

37.      In addition, Apple makes false and misleading representations to consumers without iOS 8 pre-installed or with predecessor operating systems.  For consumers looking to upgrade to iOS 8 from an earlier operating system, such as from iOS 7, it will use between 600 MB and 1.3 GB of storage space:

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

COMPLAINT

| DEVICE | SPACE AVAILABLE (IOS 7.1.2) | SPACE AVAILABLE (IOS 8.0 GM) |
|---|---|---|
| 32GB iPhone 4S (AT&T) | 27.4GB | 26.6GB |
| 32GB iPhone 5 (VZW) | 27.3GB | 26.7GB |
| 32GB iPhone 5C (AT&T) | 27.2GB | 26.5GB |
| 64GB iPhone 5S (AT&T) | 56.0GB | 55.1GB |
| 32GB iPod Touch 5 | 27.3GB | 26.6GB |
| 16GB iPad Mini (Wi-Fi) | 13.0GB | 12.1GB |
| 32GB iPad 4 (Wi-Fi) | 27.0GB | 26.1GB |
| 16GB Retina iPad Mini (Wi-Fi) | 12.3GB | 11.0GB |

38.     Andrew Cunningham, *iOS8, thoroughly reviewed*, ARSTECHNICA (Sept. 17, 2014), http://arstechnica.com/apple/2014/09/ios-8-thoroughly-reviewed/2/#install. Further, the amount of storage space necessary to perform the update is so voluminous that some consumers do not have enough space to perform the update in the first place.

39.     Thus, by upgrading to iOS 8, consumers unknowingly lose a significant amount of storage space.  The loss of this storage space is not disclosed to consumers and once the upgrade is performed the user cannot revert the Device back to an earlier, smaller, system.

40.     Numerous bloggers and consumers have complained about Apple's deceptive acts.  For example, one purchaser complained that his new iPhone 4 with a represented storage capacity of 8 GB only had 6.37 GB of storage.  An Apple representative conceded that "that is normal" and suggested that if the user did "not like it" then he/she could "take it back."https://discussions.apple.com/thread/3558683.  Another article warned that "it's important to realise [sic] that you won't get access to all of the storage that's advertised, because some of it will be used up with system data, pre-installed programs and the like."  The article notes that "[i]t might seem unfair – indeed, it would be a more honest assessment for companies to advertise the available storage – but it's the way things are for the time being." David Price, What's an

COMPLAINT

iPhone or iPad's true storage capacity? How many photos, music tracks, films, apps and games can an iOS device hold?, Macworld (Apr. 14, 2014), http://www.macworld.co.uk/feature/ipad/whats-iphone-or-ipads-true-storage-capacity-3511773/; see also Marie Brewis, New iPad: is 16GB enough storage? TechAdvisor (Mar. 8, 2012) ("before you begin filling up your [Device], the operating system and related files will consume a certain amount of storage capacity. Expect to find around 14GB of usable storage for your files on a 16GB iPad, for example.").

41.    Ultimately, the storage capacity of Apple's Devices is significantly less than the advertised capacity, with shortfalls ranging from 18.1%-23.1%.

42.    Although the loss in storage space is unforeseen by the average consumer, Apple is well aware of the result and seeks to capitalize on users losing storage space by offering additional storage space for an upgrade fee on the "iCloud". In fact, when a Device's internal memory approaches full, a pop up ad opens up and offers the purchaser the opportunity to purchase "iCloud" cloud storage for between $0.99 and $29.99 per month.

43.    Additionally, Apple does not offer or permit users to access cloud storage from other vendors, nor does it allow users to insert SD cards or other supplemental, non-Apple storage units. Apple also does not permit users to freely transfer files between the Devices and notebook or desktop PC using a "file manager" utility, an option available to most users of Android or Windows-based portable devices.

## CLASS ACTION ALLEGATIONS

44.    Plaintiff brings this action as a class action pursuant to Rule 23(a) and (b)(2) and (b)(3) of the Federal Rules of Civil Procedure for the purpose of asserting the claims alleged in this Complaint on a common basis. Plaintiff brings

COMPLAINT

this action on behalf of himself and all members of the following classes (the "Classes"):

> (1) All persons or entities in the United States who purchased an iPhone, iPod or iPad with represented storage capacity of 16GB or less with iOS 8 pre-installed for purposes other than resale or distribution (the "iOS 8 Purchaser Class");
>
> (2) All persons in the United States who purchased an iPhone, iPod or iPad with represented storage capacity of 16GB or less with iOS 8 pre-installed for personal, family or household use within four years preceding the filing of this Complaint (the "iOS Purchaser CLRA Subclass");
>
> (3) All persons or entities in the United States who upgraded an iPhone, iPod or iPad with represented storage capacity of 16GB or less to iOS 8 (the "Upgrade Class"); and
>
> (4) All persons in the United States who upgraded an iPhone, iPod or iPad used for personal, family or household use with represented storage capacity of 16GB or less to iOS 8 (the "Upgrade CLRA Subclass").

45.     Plaintiff reserves the right to modify or amend the definition of the Classes after having an opportunity to conduct further discovery.

46.     **Numerosity. Rule 23(a)(1).**  The members of the Classes are so numerous that their individual joinder is impracticable.  Plaintiff is informed and believes that the proposed Classes contain at least thousands of purchasers of Apple Devices who have been damaged by Defendant's conduct as alleged herein.

47.     **Existence of Common Questions of Law and Fact. Rule 23(a)(2).**  This action involves common questions of law and fact, which include, but are not limited to, the following:

> a.   Whether the statements made by Defendant as part of its

advertising and marketing of its Devices discussed herein are true, or are untrue, misleading, or reasonably likely to deceive;

b. Whether Defendant's conduct described herein constitutes a deceptive act or practice in violation of California's Consumers Legal Remedies Act ("CLRA");

c. Whether Defendant's conduct described herein constitutes an unlawful, unfair, and/or fraudulent business practice in violation of California's Unfair Competition Law ("UCL");

d. Whether Defendant's conduct described herein constitutes unfair, deceptive, untrue or misleading advertising in violation of California's False Advertising Law ("FAL");

e. Whether Plaintiff and the other members of the Classes are entitled to damages on the Counts where damages are an available remedy; and

f. Whether Plaintiff and the Classes are entitled to restitution, injunctive relief, or other equitable relief and/or other relief as may be proper.

48.    **Typicality. Rule 23(a)(3).** All members of the Classes have been subject to and affected by the same conduct by Defendant.  The claims alleged herein are based on the same violations by Defendant that harmed Plaintiff and members of the Classes.  By purchasing or upgrading an Apple Device during the applicable Class Period, all members of the Classes were subjected to the same wrongful conduct.  Plaintiff's claims are typical of the Class's claims and do not conflict with the interests of any other members of the Classes.  Defendant's unlawful, unfair, deceptive, and/or fraudulent actions concern the same business practices described herein, irrespective of where they occurred or were experienced.

49. **Adequacy. Rule 23(a)(4).** Plaintiff will fairly and adequately protect the interests of the members of the Classes. Plaintiff has retained counsel experienced in complex consumer class action litigation, and Plaintiff intends to prosecute this action vigorously. Plaintiff has no adverse or antagonistic interests to those of the Classes.

50. **Injunctive and Declaratory Relief. Rule 23(b)(2).** Defendant's actions regarding the deceptions and misrepresentations regarding Apple's Devices are uniform as to all members of the Classes. Defendant has acted on grounds that apply generally to the Classes so that final injunctive relief as requested herein is appropriate with respect to the Classes as a whole.

51. **Predominance and Superiority of Class Action. Rule 23(b)(3).** Questions of law or fact common to the Classes predominate over any questions affecting only individual members and a class action is superior to other methods for the fast and efficient adjudication of this controversy, for at least the following reasons:

    a. Absent a class action, members of the Classes as a practical matter will be unable to obtain redress, Defendant's violations of its legal duties will continue without remedy, additional consumers will be harmed, and Defendant will continue to retain its ill-gotten gains;

    b. It would be a substantial hardship for most individual members of the Classes if they were forced to prosecute individual actions;

    c. When the liability of Defendant has been adjudicated, the Court will be able to determine the claims of all members of the Classes;

    d. A class action will permit an orderly and expeditious administration of each Class member's claims and foster economies of time, effort, and expense;

    e. A class action regarding the issues in this case does not create any problems of manageability; and

f. Defendant has acted on grounds generally applicable to the members of the Classes, making class-wide monetary and equitable relief appropriate.

52. Plaintiff does not contemplate class notice if the Classes are certified under Rule 23(b)(2), which does not require notice, and notice to the putative Classes may be accomplished through publication, signs or placards at the point-of-sale, or other forms of distribution, if necessary, if the Classes are certified under Rule 23(b)(3), or if the Court otherwise determines class notice is required. Plaintiff will, if notice is so required, confer with Defendant and seek to present the Court with a stipulation and proposed order on the details of a class notice program.

## FIRST CLAIM FOR RELIEF

**[Violation of California Consumers Legal Remedies Act (Cal. Civil Code §§1750 *et seq.*) By Plaintiff and Purchaser and Upgrade CLRA Class Members against Defendant)**

53. Plaintiff realleges and incorporates the allegations contained in the paragraphs above, as if fully set forth herein.

54. This cause of action is brought pursuant to the Consumers Legal Remedies Act, California Civil Code §§ 1750, *et seq.* ("CLRA" or the "Act"), which provides that enumerated listed "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer are unlawful," CLRA § 1770, and that "[a]ny consumer who suffers any damage as a result of the use or employment by any person of a method, act, or practice declared to be unlawful by Section 1770 may bring an action against such person to recover or obtain" various forms of relief, including injunctive relief and damages. Cal. Civ. Code § 1780.

55. Plaintiff was deceived by Defendant's unlawful practices as described above, which included the promotion and advertising of the storage

capacity of Apple Devices, which was deceptive, false and misleading given that the represented storage capacity is not the actual storage capacity available to consumers.

56. Defendant's actions, representations and conduct have violated, and continue to violate the CLRA, because they extend to transactions that are intended to result, or which have resulted, in the sale of goods to consumers.

57. The Plaintiff and members of the Purchaser and Upgrade CLRA Subclasses are "consumers" as that term is defined by the CLRA in Cal. Civ. Code § 1761(d).

58. Defendant's Devices were and are "good[s]" within the meaning of Cal. Civ. Code §§ 1761(a) & (b).

59. Defendant violated the CLRA by engaging in at least the following practices proscribed by California Civil Code § 1770(a) in transactions with Plaintiff and the Purchaser and Upgrade CLRA Subclass, which were intended to result, and did result, in the sale of Apple's Devices:

> (5) Representing that [the Devices have] . . . approval, characteristics . . . uses [or] benefits . . . which [they do] not have . . . .
>
> \*\*\*
>
> (7) Representing that [the Devices are] of a particular standard, quality or grade, or that [Defendant's] goods are of a particular style or model, if [they are] of another.
>
> \*\*\*
>
> (9) Advertising goods . . . with intent not to sell them as advertised.

60. As such, Defendant's conduct constitutes unfair methods of competition and unfair or fraudulent acts or practices because it does not sell, and because it intends not to sell, the Devices as Defendant advertised and instead misrepresents the particulars, through its marketing and advertising, by

representing the Devices as described above, when it knew, or should have known, that the representations and advertisements were deceptive, false and misleading.

61.     As a result, Plaintiff and the Purchaser and Upgrade CLRA Subclasses have suffered irreparable harm.  Plaintiff's and other Class members' injuries were proximately caused by Defendant's conduct as alleged herein. Plaintiff, on behalf of himself and all other members of the Purchaser and Upgrade CLRA Subclasses, seek entry of an order enjoining Defendant from continuing to employ the unlawful methods, acts and practices alleged herein pursuant to California Civil Code section 1780(a)(2) and ordering restitution of actual damages in the form of monies paid for storage capacity not realized, the inflated price of the Devices, and other relief the Court deems proper.  Further, plaintiffs seek the payment of costs and attorneys' fees, and such other relief as deemed appropriate and proper by the Court under California Civil Code section 1780(a)(2).  If Defendant is not restrained from engaging in these practices in the future, Plaintiff and the Purchaser and Upgrade CLRA Subclass will continue to suffer harm.

## SECOND CLAIM FOR RELIEF

**[Violation of California's Unfair Competition Law (Cal. Business & Professions Code §§ 17200 *et seq.*) By Plaintiff and all Class Members Against All Defendants]**

62.     Plaintiff realleges and incorporates the allegations contained in the paragraphs above, as if fully set forth herein.

63.     The Unfair Competition Law, Cal. Business & Professions Code § 17200, *et seq.* ("UCL"), prohibits any "unlawful", "unfair", or "fraudulent business" act or practice and any false or misleading advertising.

64.     In the course of conducting business, Defendant committed unlawful business practices by, *inter alia*, making the representations (which also constitute

-21-

COMPLAINT

advertising within the meaning of § 17200) and violating Cal. Civil Code §§ 1750, *et seq.*, and the common law.

65. Plaintiff, individually and on behalf of the Classes, reserves the right to allege other violations of law which constitute other unlawful business acts or practices. Such conduct is ongoing and continues to this date.

66. Defendant's actions constitute "unfair" business acts or practices because, as alleged above, *inter alia*, Defendant engages in deceptive and false advertising, and misrepresents and omits material facts regarding the storage capacity of its Devices, and thereby offends an established public policy, and engages in immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to consumers. This conduct constitutes violations of the unfair prong of Business & Professions Code §§ 17200, *et seq.*

67. Business & Professions Code §§ 17200, *et seq.*, also prohibits any "fraudulent business act or practice."

68. Defendant's actions, claims, nondisclosures, and misleading statements, as alleged herein, also constitute "fraudulent" business practices in violation of the UCL because, among other things, they are false, misleading, and/or likely to deceive reasonable consumers within the meaning of Business & Professions Code §§ 17200, *et seq.*

69. There were reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein.

70. As a result of Defendant's false marketing and labeling, as detailed herein, Plaintiff and the Classes have in fact been harmed as described above. If Defendant had disclosed the information discussed above about its Devices and otherwise been truthful about the storage capacity of its Devices, Plaintiff would not have purchased Defendant's products. Defendant was also able to charge more than what its Devices would have been worth had it disclosed the truth about them.

71.     As a result of Defendant's unlawful, unfair, and fraudulent practices, Plaintiff and the Classes have suffered injury in fact and lost money.

72.     As a result of its deception, Defendant has been able to reap unjust revenue and profits in violation of the UCL.

73.     Unless restrained and enjoined, Defendant will continue to engage in the above-described conduct.  Accordingly, injunctive relief is appropriate for Plaintiff and the Classes.

74.     As a result of Defendant's conduct in violation of the UCL, Plaintiff and the Classes have been injured as alleged herein in amounts to be proven at trial because they purchased Apple's Devices without full disclosure of the material facts discussed above.

75.     As a result, Plaintiff, individually and on behalf of the Classes, and the general public, seek restitution and disgorgement of all money obtained from Plaintiff and the Classes collected by Defendant as a result of unlawful, unfair, and/or fraudulent conduct, and seek injunctive relief, and all other relief this Court deems appropriate, consistent with Business & Professions Code § 17203.

## THIRD CLAIM FOR RELIEF

**[Violation of California's False Advertising Laws (Cal. Business & Professions Code § 17500 *et seq.*) By Plaintiff and all Class Members Against All Defendants]**

76.     Plaintiff realleges and incorporates the allegations contained in the paragraphs above, as if fully set forth herein.

77.     Business & Professions Code § 17500 *et seq.* provides that it is "unlawful for any person, firm [or other party] . . . to make to disseminate before the public . . . any statement which is untrue or misleading" in connection with the sale or disposition of goods or services.

78.     As set forth above, Defendant has conducted acts of unfair competitions by engaging in a pattern of false and misleading advertising and business practices.

79.     On information and belief, Defendant engaged in unlawful advertising practices with the intent to induce members of the public to purchase goods that they believe to be of a particular quality.

80.     Defendant's deceptive advertising practices, including the storage capacity representations detailed herein, present a continuing threat to members of the public in that Defendant continues to engage in the conduct described above.

81.     Such acts and omissions are unfair and/or deceptive and/or untrue and/or misleading and constitute a violation of Business & Professions Code § 17500 *et seq.*  Plaintiff, individually and on behalf of the Classes, reserves the right to allege other violations of law which constitute other untrue or misleading statements.  Such conduct is ongoing and continues to this date.

82.     As a direct and legal result of Defendant's conduct described above, Defendant has been unjustly enriched with ill-gotten gains.  Plaintiff and the Classes are entitled to restitution and/or reimbursement of the gains Defendant received because of the misdeeds described herein.

83.     In prosecuting this action for the enforcement of important rights affecting the public interest, Plaintiff seeks the recovery of attorneys' fees pursuant to Code of Civil Procedure § 1021.5, which is available to a prevailing plaintiff who wins relief for the general public.

**PRAYER FOR RELIEF**

Wherefore, Plaintiff prays for a judgment:

a.     Certifying the Classes as requested herein, appointing Plaintiff as class representative and appointing Levi & Korsinsky, LLP as counsel for the Classes;

b.     Requiring Defendant to disgorge or return all monies, revenues and

1   profits obtained by means of any wrongful act or practice to Plaintiff and the

2   members of the Classes under Cal. Bus. & Prof. Code §§ 17200 et seq. and each

3   other cause of action where such relief is permitted;

4         c.     Enjoining Defendant from engaging in the unlawful practices as set

5   forth herein, including marketing or selling of Apple's Devices without corrective

6   action, or providing other injunctive or equitable relief;

7         d.     Awarding damages pursuant to Cal. Civ. Code § 1780, including

8   exemplary and punitive damages to prevent and deter Defendant from future

9   unlawful conduct;

10         e.     Awarding all equitable remedies pursuant to Cal. Civ. Code § 1780

11   and other applicable law;

12         f.     Awarding attorneys' fees and costs;

13         g.     Awarding pre-judgment and post-judgment interest at the legal rate;

14   and

15         h.     Providing such further relief as may be just and proper.

16   DATED: April 29, 2015       **DEL MAR LAW GROUP, LLP**

17

18                       By: _/s/John H. Donboli_

19                       John H. Donboli (SBN: 205218)
E-mail:  jdonboli@delmarlawgroup.com

20                       12250 El Camino Real, Suite 120
San Diego, CA 92130

21                       Telephone:  (858) 793-6244

22                       **LEVI & KORSINSKY LLP**
Shannon L. Hopkins

23                       Email:  shopkins@zlk.com
Nancy A. Kulesa

24                       Email:  nkulesa@zlk.com
Stephanie A. Bartone

25                       Email:  sbartone@zlk.com
733 Summer Street, Suite 304

26                       Stamford, CT 06901
Telephone: (212) 363-7500

27                       Facsimile: (212) 363-7171

28

COMPLAINT